**No. 25-7906**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**MIKHAIL CIRKUNOVS,**

*Plaintiff-Appellee*,

**v.**

**ZUFFA, LLC; TKO OPERATING COMPANY, LLC, FKA ZUFFA PARENT LLC, DBA ULTIMATE FIGHTING CHAMPIONSHIP; ENDEAVOR GROUP HOLDINGS, INC.,**

*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Nevada
No. 2:25-cv-00914-RFB-BNW (Honorable Richard F. Boulware, II)

# REPLY BRIEF FOR DEFENDANTS-APPELLANTS

William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW, Suite 800
Washington, DC 20004

Donald J. Campbell
Samuel R. Mirkovich
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, NV 89101

Samir Deger-Sen
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-4619
samir.deger-sen@lw.com

Christopher S. Yates
Aaron Tuen Fai Chiu
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Joseph D. Axelrad
LATHAM & WATKINS LLP
10250 Constellation Boulevard, Suite 1100
Los Angeles, CA 90067

August 24, 2026

*Counsel for Appellants Zuffa, LLC and TKO Operating Company, LLC*

*(additional counsel on inside cover)*

Maaren A. Shah
Ellyde R. Thompson
Ellison Ward Merkel
QUINN EMANUEL URQUHART &
SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
maarenshah@quinnemanuel.com

Kristin N. Tahler
William R. Sears
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

*Counsel for Appellant*
*Endeavor Group Holdings, Inc.*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 5

I. THE DISTRICT COURT ERRED BY CONDITIONING ARBITRABILITY ON UNNECESSARY RESOLUTION OF MERITS ISSUES .......... 5

A. Because The District Court Did Not Find Any Degree Of Substantive Unconscionability, Ordering Discovery Into Procedural Unconscionability Was Unnecessary—And Therefore Improper Under The FAA .......... 6

B. The District Court Compounded Its Error By Setting Out To Adjudicate Key Merits Issues Cirkunovs Now Agrees Are Not Necessary To Decide Procedural Unconscionability .......... 11

II. THIS COURT HAS APPELLATE JURISDICTION UNDER SECTION 16(a)(1)(A) OF THE FAA .......... 19

CONCLUSION .......... 31

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)....................23

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................19

*B.K. ex rel. Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019)....................18

*BSI Group LLC v. EZBanc Corp.*,
__ F.4th __, 2026 WL 2108675 (8th Cir. July 22, 2026)....................5, 25, 26, 30

*Cacique, Inc. v. Robert Reiser & Co.*,
169 F.3d 619 (9th Cir. 1999)....................18

*Casola v. Dexcom, Inc.*,
98 F.4th 947 (9th Cir. 2024)....................26

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023)....................30

*Coleman v. System One Holdings, LLC*,
117 F.4th 97 (3d Cir. 2024)....................20, 24, 25, 28

*GEA Group AG v. Flex-N-Gate Corp.*,
740 F.3d 411 (7th Cir. 2014)....................20

*Hansen v. LMB Mortgage Services, Inc.*,
1 F.4th 667 (9th Cir. 2021)....................1, 26, 27

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025)....................16

*Heckman v. Live Nation Entertainment, Inc.*,
686 F. Supp. 3d 939 (C.D. Cal. 2023)....................16

*Howard v. Ferrellgas Partners, L.P.*,
748 F.3d 975 (10th Cir. 2014)....................12

**Page(s)**

*Jones v. Shac LLC*,
2019 WL 4246681 (D. Nev. Sept. 6, 2019) ........................................................6

*Kirshner v. Uniden Corporation of America*,
842 F.2d 1074 (9th Cir. 1988) .........................................................................9

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) .......................................................................1, 2

*Madol v. Dan Nelson Automotive Group*,
372 F.3d 997 (8th Cir. 2004) .......................................................................24

*Nken v. Holder*,
556 U.S. 418 (2009)......................................................................................20

*O'Dell v. Aya Healthcare Services, Inc.*,
171 F.4th 1173 (9th Cir. 2026) ....................................................................30

*Public Employees Retirement Association of New Mexico v. Earley (In re PG&E Corporation Securities Litigation)*,
100 F.4th 1076 (9th Cir. 2024) ....................................................................11

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ...................................................................6, 10

*Sourcing Unlimited, Inc. v. Asimco International, Inc.*,
526 F.3d 38 (1st Cir. 2008)...........................................................................29

*Standard Fire Insurance Co. v. Knowles*,
568 U.S. 588 (2013)........................................................................................8

*U.S. Home Corp. v. Michael Ballesteros Trust*,
415 P.3d 32 (Nev. 2018).............................................................................6, 11

*United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*,
13 F.3d 1365 (9th Cir. 1994) .........................................................................2

*United States v. Lemus*,
93 F.4th 1255 (9th Cir.), *cert. denied*, 145 S. Ct. 581 (2024) ............................22

**Page(s)**

*Van Dusen v. Swift Transportation Co.*,
830 F.3d 893 (9th Cir. 2016) ....................................................................20, 22

## STATUTES

9 U.S.C. § 3 ..........................................................................2, 4, 19, 20, 23

9 U.S.C. § 4 ..........................................................................................1, 6

9 U.S.C. § 16(a)(1)(A) ...........................................................2, 4, 19, 21, 23

9 U.S.C. § 16(a)(1)(B) ............................................................................4, 22

## OTHER AUTHORITIES

9th Cir. R. 10-2 .............................................................................................9

*Black's Law Dictionary* (12th ed. 2024).......................................................20

Merriam-Webster.com,
https://www.merriam-webster.com/dictionary (last visited Aug. 24,
2026) ..............................................................................................................20

## INTRODUCTION

This case concerns an arbitration agreement that Cirkunovs' own counsel conceded in open court was enforceable under binding Supreme Court precedent. Opening Brief ("OB") 9-10. Cirkunovs has since striven mightily to avoid having a court enforce that agreement—including by weaponizing discovery and meritless sanctions requests that he hopes will let him avoid arbitration altogether. The district court, remarkably, has permitted that gambit: Without even requiring Cirkunovs to respond to Defendants' motion to compel arbitration, the district court declared that it could not decide whether Cirkunovs' claims belong in arbitration without expansive discovery into Defendants' "monopsony power" and "monopoly power in the output market," 1-ER-62—merits issues that should be for the arbitrator to decide in the first instance.

That decision squarely contravenes the text and purpose of the Federal Arbitration Act ("FAA"), which places stringent limits on a district court's discretion in handling motions to compel arbitration. A district court must begin by "hear[ing] the parties" through a motion-to-dismiss-like procedure to determine whether arbitrability is actually "in issue." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4); *see Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022). If it is, the court can order limited discovery—but that discovery must be tailored to the issues actually *necessary* to "summarily"

determine arbitrability. *See Knapke*, 38 F.4th at 831, 833 (citation omitted). That limitation ensures that courts do not "determin[e] the *merits*" of a claim "under the guise of deciding questions of arbitrability." *United Food & Com. Workers Union, Loc. 770 v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir. 1994). And to ensure compliance, Congress provided an automatic right to interlocutory appellate review whenever a district court improperly declines to stay "the trial of the action" pending arbitration. 9 U.S.C. §§ 3, 16(a)(1)(A).

Under those principles, this appeal is straightforward. After refusing to properly "hear the parties" on Defendants' motion, the district court skipped over the crucial gating question of whether arbitrability was actually "in issue" by failing entirely to address substantive unconscionability. And it compounded that error by ordering wide-ranging discovery into merits issues (monopoly and monopsony power) that Cirkunovs now *concedes* are not necessary to decide procedural unconscionability. *See* Answering Brief ("AB") 46-47. Those missteps defeat Defendants' right to arbitrate. By the time the district court "hears" and resolves Defendants' motion to compel, the merits of Cirkunovs' antitrust claims will already have been decided *in court*. Congress did not permit that result, or intend such gamesmanship to evade the interlocutory review the FAA provides.

Unable to defend the district court's decision, Cirkunovs' answering brief is an exercise in obfuscation. He largely accepts the key legal principles—including

that a district court may order discovery only if discovery is necessary to decide whether an arbitration agreement is enforceable (*see* AB3, 51-52 & n.13); and that Defendants' "monopsony power" and "monopoly power," 1-ER-62, need not be determined to answer the enforceability question (*see* AB46-47). Those principles resolve this appeal.

So, Cirkunovs pivots to defending a largely fictitious order. He says that the district court silently adjudicated substantive unconscionability based on a brief filed by different parties in a different case, AB58-60; that it planned only "a 'very basic' assessment of unequal bargaining power under Nevada law," AB67 (citation omitted); and that it never actually intended to address monopsony or monopoly power, despite ordering expansive discovery on those very issues, AB45-47, 67-68. But the words on the page do not lie. The court expressly stated that "monopsony power" and "monopoly power" were threshold inquiries and ordered discovery into the Ultimate Fighting Championship's ("UFC's") share of contracted fighters and its event production relative to alleged competitors. 1-ER-62. Cirkunovs offers no explanation of how that discovery could be part of a "very basic" inquiry, or why it would be needed if the court did not mean what it said. Nor does he explain how it might differ from the merits of his antitrust claim. That Cirkunovs resorts to denying reality only underscores that the order is indefensible on its own terms.

Nor are the district court's errors beyond this Court's reach. As Defendants explained, and as other courts of appeals recognize, an order that sets a course to determine the merits of a dispute is an order "refusing a stay" that is immediately appealable under Section 16(a)(1)(A) of the FAA. Cirkunovs' contrary position ignores the statutory text. Section 16(a)(1)(A) authorizes appellate review of any order "*refusing* a stay" under Section 3 of the FAA, 9 U.S.C. § 16(a)(1)(A) (emphasis added)—not, as Cirkunovs would have it, only an order "*denying*" a stay motion, which is the language Congress used in Section 16(a)(1)(B), *id.* § 16(a)(1)(B) (emphasis added). And Section 3 directs a court to "stay the trial of the action" whenever an issue in that action is "referable to arbitration." *Id.* § 3. A court that instead orders the parties to litigate the merits before deciding arbitrability has refused to do what Section 3 plainly directs.

The consequences of Cirkunovs' arguments confirm that he cannot be correct. In Cirkunovs' view, a district court could condition arbitrability on key merits determinations, order the parties to litigate those merits issues through full-blown discovery and trial, and remain entirely insulated from appellate review. Under that theory, any court could decide the very issues the parties agreed to arbitrate under the guise of deciding arbitrability. That result would render Section 16's guarantee of interlocutory review a dead letter and gravely threaten the arbitration right itself. As the Eighth Circuit recently put it, if a "district court can proceed with pretrial

matters while the question of arbitrability is pending," many of the core "benefits of arbitration, including efficiency and less intrusive discovery, will be lost" forever. *BSI Grp. LLC v. EZBanc Corp.*, __ F.4th __, 2026 WL 2108675, at *2 (8th Cir. July 22, 2026). This Court should reject Cirkunovs' attempt to evade review of an indefensible order.

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY CONDITIONING ARBITRABILITY ON UNNECESSARY RESOLUTION OF MERITS ISSUES

As Cirkunovs ultimately concedes, the FAA permits discovery into arbitrability only when discovery is "necessary" to decide where a plaintiff's claims should proceed. OB33-38; *see* AB3, 51-52 & n.13. And it forbids courts from deciding merits issues before adjudicating arbitrability, outside of the rare circumstance in which arbitrability turns on a merits question. OB36-38. The district court contravened both limits by (1) ordering sweeping discovery without first determining that arbitrability was actually "in issue," and (2) setting out to decide key merits issues—monopoly and monopsony power—that even Cirkunovs now concedes are *not* necessary to determine whether his claims belong in arbitration. Both errors warrant vacatur.

### A. Because The District Court Did Not Find Any Degree Of Substantive Unconscionability, Ordering Discovery Into Procedural Unconscionability Was Unnecessary—And Therefore Improper Under The FAA

The FAA and this Court's precedent make clear that discovery related to arbitration is permissible "only if" arbitrability is actually "'in issue.'" *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4). As relevant here, arbitrability is "in issue" only if the arbitration clause may be unenforceable, which ultimately requires showing *both* substantive and procedural unconscionability under Nevada law. *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018) (en banc). Accordingly, discovery into procedural unconscionability is unnecessary—and thus impermissible under the FAA—absent some showing of substantive unconscionability. Or, as the district court itself has recognized elsewhere, evidence of procedural unconscionability is "not relevant" to arbitrability where the resisting party is "unable to demonstrate substantive unconscionability." *Jones v. Shac LLC*, 2019 WL 4246681, at *6 (D. Nev. Sept. 6, 2019) (Boulware, J.).

The district court flouted those principles here by ordering sweeping discovery purportedly aimed at procedural unconscionability without holding that Cirkunovs had shown substantive unconscionability, raised a material issue of fact on that question, or needed discovery to do so. OB42-46. That failure is unsurprising: As Defendants explained, OB44, Cirkunovs failed to address

substantive unconscionability as part of his "intended [post-discovery] showing" on unconscionability, *see* 2-ER-141–42, even after the district court asked Cirkunovs' counsel about the issue, *see* 1-ER-32–34. Absent a determination that Cirkunovs had demonstrated at least some degree of substantive unconscionability (or needed discovery to do so), the district court had no basis to conclude that arbitrability was "in issue"—and thus no basis under the FAA to order sweeping merits discovery purportedly grounded in procedural unconscionability.

Cirkunovs basically concedes all of this. He agrees that discovery is permitted only if arbitrability is put "in issue" and only if discovery is "relevant *and necessary*" to resolving arbitrability. *See* AB3, 49-55 & n.13 (emphasis added). He concedes that Nevada law requires "both procedural and substantive unconscionability" to place enforceability (and thus arbitrability) in issue. AB60. He tacitly concedes that he did not meaningfully argue substantive unconscionability in this case, relying instead on arguments raised by different parties in a different case. AB57-59. And he concedes that the district court made no "express findings" on substantive unconscionability "before ordering discovery on procedural unconscionability." AB59-60, 66. These concessions confirm the error of the court's decision.

Rather than defend the order as issued, Cirkunovs defends an order of his own imagination—one that bears little resemblance to what he argued and what the

district court said. These attempts to paper over the district court's failure to address substantive unconscionability all fail.

Cirkunovs begins by suggesting that the district court might have implicitly considered substantive unconscionability because he purportedly briefed the issue. AB58-60. But his argument improperly rests on a brief filed by the named plaintiffs in *Johnson v. Zuffa, LLC*, No. 21-cv-01189 (D. Nev.)—a separate case. *See* AB49-50, 58-60; SER-5–31. Cirkunovs repeatedly cites that *Johnson* filing as evidence that "Cirkunovs and the *Johnson* Plaintiffs briefed substantive unconscionability at length below." AB49; *see also* AB27.

That is blatantly incorrect. Cirkunovs is not a named plaintiff in *Johnson*. *See* SER-12. Nor did the *Johnson* plaintiffs—who did not represent any certified class—speak for Cirkunovs. *Cf. Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592-93 (2013) (stipulation by named plaintiff "does not speak for those he purports to represent" "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified"). Indeed, none of the *Johnson* named plaintiffs had signed arbitration agreements, SER-10, so the district court could not have adjudicated the substantive unconscionability of such agreements in *Johnson*.[1] And the cited *Johnson* brief was filed more than two

[1] Because none of the *Johnson* plaintiffs had agreed to arbitrate, there was not even a motion to compel arbitration in *Johnson*. The brief Cirkunovs relies on

months before Defendants even moved to compel arbitration in this case. *See* SER-29; 2-ER-316 (Dkt. 38).

In other words, Cirkunovs' best argument that he put substantive unconscionability in issue in this case is to invoke—and misrepresent the scope of—a brief filed in a different case by different plaintiffs responding to a different motion in a different procedural posture. But the Court must resolve this appeal based on the record in *this* case—which, notably, is where the *Johnson* plaintiffs themselves said arbitrability should be litigated. SER-10 n.2 (calling "the *Cirkunovs* action" "[t]he appropriate place to adjudicate … enforceability"). And in this case, Cirkunovs did not put substantive unconscionability in issue—as his reliance on *Johnson* tacitly acknowledges.[2]

In any event, Cirkunovs' misguided reliance on the *Johnson* briefing does not excuse the district court's error in ordering discovery without addressing substantive unconscionability. Cirkunovs tries to get around this problem by first suggesting

---

instead discussed substantive unconscionability in addressing whether class certification should be preemptively denied because the named plaintiffs in *Johnson* were not adequate and typical representatives of unnamed class members who *had* agreed to arbitrate. *See* SER-17–19, SER-22–28.

[2] Although discovery across the cases is "consolidated to the extent that such discovery overlaps," 2-ER-313 (Dkt. 9), *Cirkunovs* and *Johnson* are not otherwise consolidated. Thus, Cirkunovs' inclusion of filings from a separate case as "Supplemental Excerpts of Record" in *this* case is plainly improper. *See* 9th Cir. R. 10-2; *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988).

that the district court *did* make a "formal finding[] … that arbitrability was in issue." AB55. But he points to a portion of the transcript where the district court found "a factual dispute between the parties with respect to the circumstances of the negotiation of the arbitration clause" and discussed the "relevan[ce]" of the UFC's "market position," *id.* (quoting 1-ER-61–62)—issues which, at most, go only to *procedural*, and not substantive, unconscionability, *see* OB45. That this is Cirkunovs' best support just underscores that the district court did not, in fact, find *substantive* unconscionability to be "in issue."

Cirkunovs then pivots to arguing that "express findings" on substantive unconscionability are not required. AB59-61 & n.17. This is a straw man. Whether "express" or otherwise, the FAA requires a district court to *determine* that arbitrability is "in issue" before it orders discovery. *See* OB33-38; *cf. Simula*, 175 F.3d at 726. That did not happen here. The court did not even require Cirkunovs to respond to Defendants' motion to compel. Thus, there was no briefing or meaningful legal argument on substantive unconscionability; barely any discussion of it during the parties' extensive colloquies, *e.g.*, 1-ER-32–34; and no findings about it of any kind, *see* OB45. Unsurprisingly, none of the discovery ordered had anything to do with substantive unconscionability. *Id.*

Thus, nothing in the record supports Cirkunovs' suggestion that the district court silently found substantive unconscionability to be "in issue." *See* AB49-50,

59-60. As an appellate court, this Court "generally 'decline[s] to indulge in speculation'" about a district court's decision "'in an effort to make plain that which is not discernible in the record.'" *Pub. Emps. Ret. Ass'n of N.M. v. Earley (In re PG&E Corp. Sec. Litig.)*, 100 F.4th 1076, 1087-88 (9th Cir. 2024) (citation omitted). Such indulgence is unwarranted here.

Finally, Cirkunovs attempts to excuse the district court's failure by noting that, under Nevada law, "procedural and substantive unconscionability operate on a sliding scale." AB60-61. This is another red herring. A "sliding scale" does not mean the district court was free to skip over substantive unconscionability altogether. Nevada law unequivocally "requires *both* procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp.*, 415 P.3d at 40 (emphasis added). Here, the district court failed to find *any* degree of substantive unconscionability, meaning that discovery into procedural unconscionability was not warranted under Nevada law, and thus not permissible under the FAA. *See* OB43 & n.13.

### B. The District Court Compounded Its Error By Setting Out To Adjudicate Key Merits Issues Cirkunovs Now Agrees Are Not Necessary To Decide Procedural Unconscionability

For the reasons above, the district court should not have reached procedural unconscionability at all. But having done so, it again flouted the FAA by setting out

to decide key merits issues that even Cirkunovs now agrees are unnecessary to decide procedural unconscionability. That, too, is error warranting vacatur.

As Defendants explained, the FAA "requires courts [to] process the [arbitrability] question quickly so the parties can get on with the merits of their dispute in the right forum"; it does not permit "death by discovery." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (Gorsuch, J.); *see* OB31, 36-38, 52-53. To that end, the FAA allows inquiry into the merits only in the rare circumstance where it is *necessary* to decide issues of arbitrability. OB36-38. If a court does not need to decide a merits issue to determine arbitrability, resolution of that issue is improper.

Here, the district court demanded full-sail merits discovery into the UFC's "monopsony power" and "monopoly power in the output market," including "the percentage of fighters that were controlled or under contract from the UFC" and "the promotional events that were produced by the UFC in comparison to other alleged competitors," 1-ER-62. But as Defendants demonstrated, even as to procedural unconscionability, this discovery was not necessary. OB46-52.

Once again, Cirkunovs concedes this argument away. He does not meaningfully dispute that a court can reach only those merits issues *necessary* to resolving arbitrability. *See* AB52 n.13. And he agrees that "*[t]here is no reason the court would need to address*" monopsony power "to decide" arbitrability in this case.

AB46-47 (emphasis added). The Court need look no further: The order below was improper because it set out to decide—and ordered expansive discovery into—merits issues that all parties apparently (now) agree were not necessary to adjudicate arbitrability.

Cirkunovs strains to resist that conclusion in several ways, none of which is persuasive. Most fundamentally, he tries to claim that the district court intended to conduct only "a basic, informal analysis" of Defendants' bargaining power—and not a full-blown analysis of monopoly or monopsony power—before deciding whether his arbitration agreement was procedurally unconscionable. AB67-68 n.20; *see also* AB14-15, 25, 67.

That blinks reality. In the district court's own words, it was "very clear" in "find[ing] that the market position of UFC, the issue of *its monopsony power or not*, the issue of *its monopoly power* and the output market or not are all relevant to a determination of whether or not the arbitration clause is enforceable." 1-ER-11 (emphases added). And while Cirkunovs suggests that "market power" might be "informal" shorthand for "unequal bargaining power," AB67 n.20, he tellingly does not claim that "monopsony power" and "monopoly power"—terms the district court used when ordering discovery—have such an informal meaning, *see id.*

The court's *actions* confirm that it was not embarking on a "very basic" analysis of market power. Reiterating its belief that the UFC's "monopsony power

and actually monopoly power in the output market" were "relevant to [its] inquiry as to the enforceability of the arbitration clause," the court ordered discovery into "the percentage of fighters that were controlled or under contract from the UFC" and "the promotional events that were produced by the UFC in comparison to other alleged competitors." 1-ER-62. That is plainly not the stuff of which "a basic, informal analysis" of bargaining power, AB68 n.20, is made.

Indeed, Cirkunovs' repeated invocation of the "very basic" language badly distorts the record. He draws that language from an October 2025 colloquy during which the district court said that Cirkunovs' anticipated argument that fighters "had nowhere to go" other than to Zuffa was "going to be complicated in some of the details, but *the argument's* actually very basic." 2-ER-189–90 (emphasis added); *see, e.g.*, AB67-68. The court never suggested that the inquiry to *evaluate* that argument was "very basic." And Cirkunovs himself went on to tell the court that he needed "market share data" before responding to Defendants' arbitration motion. 2-ER-190. Cirkunovs nowhere explains why that kind of data would be required for a "very basic" analysis of bargaining power, let alone bargaining power relevant to his individual arbitration agreement.

Moreover, it is particularly disingenuous for Cirkunovs to now suggest that the district court was only planning a "very basic" or "informal" analysis, because

Cirkunovs repeatedly *invited* the court to determine whether the UFC possessed monopsony power before deciding arbitrability. For example:

- In seeking discovery, Cirkunovs insisted that "the merits of Plaintiffs' monopsonization claim bear[] directly on the conscionability of Zuffa's arbitration clauses"—even going so far as to represent that the district court had already "found" as much. 2-ER-137.
- Cirkunovs similarly argued that "arbitration discovery should conclude when merits fact discovery closes" because "the merits of Plaintiffs' monopsonization claim bear heavily on the conscionability of Zuffa's arbitration clauses." 2-ER-216.
- Cirkunovs also insisted that he needed certain data related to fighter compensation, which he characterized as "fundamental information necessary to fully and fairly resolve Defendants' Motion to Compel Arbitration and the monopsony issues in this case generally." 2-ER-167–68. That data, he explained, would ostensibly allow him to "demonstrate[]" the "UFC's monopsony power." 2-ER-166–67.

Given his repeated exhortations for the district court to *decide* the issue of Defendants' monopsony power *before* deciding arbitrability, Cirkunovs' newfound insistence that the court planned some unspecified "very basic" analysis rings hollow.

Cirkunovs also invokes a one-paragraph discussion of "market dominance" in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 682 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025). AB46. But *Heckman* does not remotely support the proposition that a court must resolve—much less order extensive discovery into—whether a defendant exercised "monopoly power" as a threshold to arbitrability in an antitrust case. If anything, *Heckman* underscores just how far astray the district court went here. When the district court in *Heckman* observed that the defendants had "market dominance in the ticket services industries," it was citing a single paragraph of the plaintiffs' complaint, not relying on merits discovery to resolve an antitrust question. *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 952 (C.D. Cal. 2023); *see also Heckman*, 120 F.4th at 682 (quoting that conclusion). Indeed, the district court in *Heckman* cautioned that, "[i]n deciding a motion to compel arbitration," a court "may not review the merits of the underlying case," 686 F. Supp. 3d at 950 (alteration in original) (citation omitted), and—as Cirkunovs agrees—it never "perform[ed] any technical analysis under the Sherman Act," AB69. *Heckman* does not bless the sweeping market-power discovery ordered below, or the district court's intended market-power determination.[3]

---

[3] It is also not at all clear that the same "market dominance" analysis would carry over here. *Heckman* involved a consumer contract offered to the general public on "a take-it-or-leave-it basis," with "no opportunity for consumers to negotiate individual terms." 686 F. Supp. 3d at 952. Cirkunovs' Promotion Agreement, by

Nor could it. Because most antitrust defendants in a Section 2 case are, by definition, accused of wielding monopoly or monopsony power, Cirkunovs' rule would foreclose pre-discovery arbitration in virtually every antitrust case. OB49-50. And because the rule Cirkunovs proposes is one of *arbitrability*, nothing would confine it to antitrust suits. *See* OB50-51. Any arbitration proponent could be forced to litigate its market position in court before it could enforce its bargained-for right to arbitrate. *Id.* Cirkunovs offers no meaningful response to this fundamental problem. His vague assurance that the order below rests on "specific fact[s]," AB69, supplies no limiting principle at all.

Next, Cirkunovs argues that, even if a district court cannot actually *decide* merits issues before adjudicating arbitrability, it can force an arbitration proponent to undergo onerous merits discovery before determining where a plaintiff's claims belong, so long as that discovery is "relevant and proportional." AB51-52 & n.13, 57, 61. That makes no sense. If the district court is not deciding monopsony and monopoly power as part of its arbitrability analysis, then the sweeping discovery

---

contrast, is an *individually* negotiated services contract, and the procedural unconscionability inquiry in that setting turns on the bargaining dynamics of the negotiation itself rather than on a defendant's aggregate market share. OB51-52. And here, Defendants produced all of the individualized negotiation discovery that inquiry requires. OB19-20. Given that production—which reflects no indication of coercive bargaining (and indeed the opposite, *id.*)—it is entirely unclear how broad findings regarding Defendants' supposed monopoly power could be *necessary* to the procedural unconscionability inquiry.

ordered on those issues is not "relevant" or "proportional." *Cf. Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622-23 (9th Cir. 1999) (vacating discovery order where the information sought was not relevant to any issue the district court was required to decide under state law). And if the court *does* intend to decide those issues, it is impermissibly intruding on merits issues Cirkunovs now agrees are unnecessary to adjudicate arbitrability.

In reality, Cirkunovs seems to be invoking the "relevant and proportional" language as an attempt to recast this appeal as a humdrum discovery dispute reviewed for abuse of discretion. *E.g.*, AB28-29, 50-51. But that misunderstands the nature of the district court's error below. The question is not whether the court permissibly exercised its discretion to manage discovery, but whether it purported to exercise discretion where *the FAA gives it none*. The district court's noncompliance with statutory requirements is a legal error that this Court reviews *de novo*. OB31; *see Cacique*, 169 F.3d at 622.

In any event, the district court's order cannot stand even under an abuse-of-discretion standard. "An error of law is a per se abuse of discretion." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 965 (9th Cir. 2019). Similarly, "[e]nforcing a discovery request for *irrelevant* information"—as the district court proposed to do here—"is a per se abuse of discretion." *Cacique*, 169 F.3d at 622. "On either ground, error of law or abuse of discretion," the order below "must be vacated." *Id.*

## II. THIS COURT HAS APPELLATE JURISDICTION UNDER SECTION 16(a)(1)(A) OF THE FAA

Unable to defend the district court's errors on the merits, Cirkunovs principally argues that those errors—no matter how egregious—are unreviewable. In his view, appealability turns on whether the court enters an order styled as a "denial," even where the court has entirely defeated a party's arbitration rights by forcing it to litigate the merits as a purported threshold to arbitrability. That approach would gravely undermine the FAA's "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted), and cannot be reconciled with the plain text of Section 16(a)(1)(A).

Cirkunovs' primary theory is that Section 16(a)(1)(A) confers appellate jurisdiction only over an order that formally denies a stay motion. AB1, 37-39. But that is not what the statute says. Section 16(a)(1)(A) authorizes an appeal from an order "*refusing* a stay of any action" under Section 3 of the FAA. 9 U.S.C. § 16(a)(1)(A) (emphasis added). Section 3, in turn, requires a court to "stay the trial of the action" when the suit involves "any issue referable to arbitration" under a written arbitration agreement. *Id.* § 3. Congress thus did not limit appeals to orders "denying" a stay motion; it made appealable any order "refusing [to] stay" an "issue referable to arbitration."

The ordinary meaning of "refusing a stay" confirms that Cirkunovs' reading is wrong. This Court "interpret[s] the text of the FAA, including § 16, according to

its ordinary meaning." *Van Dusen v. Swift Transp. Co.*, 830 F.3d 893, 897 (9th Cir. 2016). To "refuse" is "to show or express unwillingness to do" something, *Refuse*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/refuse (last visited Aug. 24, 2026); and to "stay" a proceeding is to "postpone[] or halt[]" it, *Stay*, *Black's Law Dictionary* (12th ed. 2024); *see Nken v. Holder*, 556 U.S. 418, 428 (2009) (to "stay" a proceeding is to "halt[] or postpon[e] some portion" of it).

Section 3 of the FAA "requires the district court … to 'stay the trial of the action,'" "'upon any issue referable to arbitration.'" *Coleman v. Sys. One Holdings, LLC*, 117 F.4th 97, 102 (3d Cir. 2024) (emphasis omitted) (quoting 9 U.S.C. § 3). In turn, "trial of the action," 9 U.S.C. § 3, is an "archaic term" that "has been understood to include pretrial proceedings, such as discovery, rather than being limited to the trial phase of litigation," *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 415 (7th Cir. 2014) (Posner, J.). A district court therefore "refuse[s] to grant a stay under section 3"—the condition triggering appellate jurisdiction under Section 16(a)(1)(A)—when it "*order[s] proceedings to resolve* the substance of a plaintiff's claims." *Coleman*, 117 F.4th at 103 n.6 (emphasis added).

The operative question, then, is whether the district court here ordered proceedings intended to resolve the merits. As discussed above, it plainly did. The court indicated that it would not determine "whether or not the arbitration clause is enforceable" until it resolved "the market position of UFC," "its monopsony power"

and "its monopoly power." 1-ER-11. It then ordered discovery into precisely those merits issues. 1-ER-62. An order *setting a course* to decide the merits does not halt or postpone them; it refuses to do so.

Cirkunovs' contrary argument has no anchor in the FAA's text. According to Cirkunovs, if a court "order[s] proceedings to determine arbitrability, that order is not appealable," no matter what those "proceedings" entail. AB42. But Cirkunovs never explains how an order "refusing a stay," 9 U.S.C. § 16(a)(1)(A), ceases to be one simply because the district court has labeled the proceedings it ordered a predicate to "determin[ing] arbitrability." And the consequences of his reading would be extraordinary. Under that view, a district court could simply announce that it believes any arbitration agreement between an antitrust violator and a consumer is unconscionable, and so it cannot "determine arbitrability" until it decides whether the defendant violated the Sherman Act. It could then order full-blown merits discovery, dispositive briefing, and even a trial on Sherman Act liability—all styled as a predicate to "determin[ing] arbitrability." And none of that would be reviewable. That cannot be right. Section 16(a)(1)(A) turns on the substance of what a district court has ordered, not on how an order is styled.

Rather than grapple with the plain text of Section 16(a)(1)(A), Cirkunovs relies almost entirely on this Court's decision in *Van Dusen*. AB33-39. But *Van Dusen* addressed Section 16(a)(1)(B), which authorizes an appeal from an order

"*denying a petition* … to order arbitration to proceed." 830 F.3d at 897 (emphasis added) (quoting 9 U.S.C. § 16(a)(1)(B)). *Van Dusen* rejected the argument that a district court's "'effective denial'" of a motion to compel arbitration triggers appellate jurisdiction under Section 16(a)(1)(B), reasoning that that provision's "plain text" requires "[a]n actual order *denying* a petition to compel arbitration." *Id.* at 897-99 (emphasis added). *Van Dusen* thus confirms Defendants' point: Section 16 must be read according to the precise words Congress used.[4]

Those precise words differ here. Section 16(a)(1)(A) makes appealable any order "refusing a stay," while Section 16(a)(1)(B) reaches only an order "denying a petition" to compel arbitration. Cirkunovs offers no textual basis for equating the two formulations, and there is none. It is "a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *United States v. Lemus*, 93 F.4th 1255, 1261 (9th Cir.) (citation omitted), *cert. denied*, 145 S. Ct. 581 (2024). *Van Dusen*'s insistence on "[a]n actual order denying" a petition under Section 16(a)(1)(B), 830 F.3d at 899, therefore says nothing about what qualifies as an order "refusing a stay" under Section 16(a)(1)(A).

---

[4] Defendants do not "all but concede" that *Van Dusen* controls (AB33 n.7) by indicating that, should the Court *extend Van Dusen*'s holding to reach this case, they reserve the right to seek en banc review of *Van Dusen* and any such extension.

Cirkunovs' fallback argument fares no better. He contends that, even if the order below refused a stay, such a stay "would not arise 'under Section 3,'" AB39, because Section 3 directs a court to stay the trial of an action only "upon being satisfied that the issue involved … is referable to arbitration." 9 U.S.C. § 3; *see* AB37-40. Taken seriously, that reading would confine Section 16(a)(1)(A) to a virtual impossibility: An appeal could be taken only where a district court is "satisfied" that an issue is referable to arbitration, yet refuses the very stay that Section 3 then commands it to enter.[5] Even Cirkunovs does not embrace that result, asserting instead that an appeal lies "[i]f a court has become 'satisfied' that a dispute is *not* arbitrable and denied a stay." AB42 (emphasis added). But that argument has no basis in the text of either Section 3 or Section 16. Section 3 speaks of satisfaction in one direction only: A court's satisfaction that an issue *is* referable to arbitration is what obligates it to *grant* a stay. The statute says nothing about a court being "satisfied" that a dispute is *not* arbitrable, and attaches no consequence to any such conclusion. And Section 16(a)(1)(A) makes no mention of satisfaction at all; it conditions appealability on nothing beyond an order "*refusing* a stay." 9 U.S.C.

---

[5] As Defendants have explained, that is not the best reading of the text. Section 16(a)(1)(A) asks only whether a stay was "refus[ed]." 9 U.S.C. § 16(a)(1)(A). Appellate jurisdiction therefore does not turn on "whether the litigant is in fact eligible for a stay." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009); OB59.

§ 16(a)(1)(A) (emphasis added). What remains of Cirkunovs' test is the single question whether the district court "denied" a stay. That is simply an impermissible request to substitute Section 16(a)(1)(A)'s "refusing" a stay with "denying" a stay. *See supra* at 21-22.

Nor does the Third Circuit's decision in *Coleman* help Cirkunovs. *Contra* AB41. Instead, *Coleman* confirms that a court need not formally deny a stay motion to trigger jurisdiction under Section 16(a)(1)(A). The "limited discovery and supplemental briefing" ordered there "did not constitute the trial of an action upon" an issue referable to arbitration because they "would not address the substance of" the *Coleman* plaintiffs' claims, but "instead addressed the *antecedent and collateral* question" of arbitrability. 117 F.4th at 102 (emphasis added). Where, as here, a district court makes arbitrability contingent on the merits, arbitrability is not "antecedent and collateral" to the merits. And *Coleman* itself recognized "that a district court *does* refuse to grant a stay under section 3"—thus creating an appealable order—"by ordering proceedings to resolve the substance of a plaintiff's claims." *Id.* at 103 n.6 (emphasis added). *Coleman* thus refutes both of Cirkunovs' arguments—that the order here did not "refuse" a stay, and that any such stay "would not arise 'under Section 3'" of the FAA. AB37-40.

As Defendants explained, the Eighth Circuit has exercised appellate jurisdiction in circumstances similar to this case. *See Madol v. Dan Nelson*

*Automotive Grp.*, 372 F.3d 997, 998-99 (8th Cir. 2004); OB56-57. Cirkunovs concedes that *Madol* contradicts his position, but urges this Court to create a circuit conflict by disregarding *Madol* an "outlier" that is entitled to "no weight." AB42. But *Madol* does not stand alone in supporting appellate jurisdiction here; *Coleman* counsels the same result, because the order below set "proceedings to resolve the substance of a plaintiff's claims," 117 F.4th at 103 n.6. It is Cirkunovs' contrary rule that would make this Court an "outlier."

The Eighth Circuit's recent exercise of appellate jurisdiction in *BSI Group* further confirms *Madol*'s holding. There, the district court entered a scheduling order requiring "discovery on arbitrability and merits to proceed in tandem," with "a trial on the merits to begin immediately if the jury determine[d] the parties did not agree to arbitration." 2026 WL 2108675, at *1. One defendant moved to "stay all pretrial deadlines related to the merits of the case and the merits trial date pending the resolution of the motion to compel arbitration." *Id.* When the court denied that stay motion, the defendant appealed. *Id.* The plaintiffs moved to dismiss the appeal for lack of appellate jurisdiction, arguing that Section 16(a)(1)(A) did not confer jurisdiction because the district court "ha[d] not yet been satisfied that an agreement to arbitrate exists"—the same theory Cirkunovs presses here. Appellees' Mot. to Dismiss Appeal at 7-9, *BSI Grp. LLC v. EZBanc Corp.*, No. 25-1302 (8th Cir. Feb. 26, 2025). The Eighth Circuit denied the motion and proceeded to hear the appeal.

*See* Order, *BSI Grp. LLC v. EZBanc Corp.*, No. 25-1302 (8th Cir. Mar. 31, 2025). Although the Eighth Circuit did not specify whether its appellate jurisdiction rested on Section 16(a)(1)(A) or (B), *see id.*; *BSI Grp.*, 2026 WL 2108675 (not discussing appellate jurisdiction), the appellant argued that "*Madol* [was] squarely on point" and supported jurisdiction under Section 16(a)(1)(A). Appellant's Resp. to Pls.' Mot. to Dismiss Appeal at 6-7, *BSI Grp. LLC v. EZBanc Corp.*, No. 25-1302 (8th Cir. Mar. 10, 2025). This Court should follow the Eighth Circuit's recent example and reaffirm that, except on a showing of necessity Cirkunovs does not even attempt to make, the FAA "dictates that discovery on the underlying merits should not occur until after the proper venue, i.e. arbitration or federal court, is determined." *BSI Grp.*, 2026 WL 2108675, at *3.

Nor does this Court's decision in *Hansen* foreclose appellate jurisdiction here. Cirkunovs makes much of *Hansen*'s statement that "[n]othing in § 16 … authorizes appellate courts to adjudicate the district court's decision that it cannot make a final ruling on the motion to compel until genuine issues of material fact over the making of the arbitration agreement have been resolved." 1 F.4th at 673; *see* AB2-3, 35, 48, 52. But this appeal does not ask this Court to second-guess the district court's conclusion that there were genuine factual disputes over procedural unconscionability. Instead, it asks the Court to enforce procedural guardrails with which a district court is statutorily required to comply. *Cf. Casola v. Dexcom, Inc.*,

98 F.4th 947, 953, 964 (9th Cir. 2024) (Court had appellate jurisdiction to determine "whether the district court exceeded the scope of its [statutory] authority," even where it lacked jurisdiction over "whether a particular exercise of [that] power was proper" (citations omitted)).

Specifically, the FAA prohibits a district court from (1) proceeding to discovery unless arbitrability is "in issue," or (2) resolving merits questions unless necessary to resolve arbitrability. *Hansen* holds only that an appellate court cannot second-guess a district court's finding, made in *accordance with the procedures* the FAA requires, that a "genuine issue[] of material fact" requires a summary trial on arbitrability. *Hansen*, 1 F.4th at 671-73. It does not foreclose review of the antecedent question of whether the district court properly *followed* the FAA's procedures in the first place. Indeed, *Hansen* itself exercised jurisdiction and vacated the district court's order for failing to comply with the FAA's procedures. *Id.* at 672-73.

Defendants' challenge fits that mold: They ask this Court to review the district court's failure to (a) "hear the parties" on their motion to compel arbitration; (b) determine whether arbitrability was actually "in issue"; and (c) resolve merits issues only when necessary to determine arbitrability. The district court's failure to adhere to those procedural requirements is reviewable under *Hansen*.

Finally, Cirkunovs resorts to a series of policy arguments and ad hominem attacks. He suggests that Defendants seek "an appellate determination on the enforceability of their arbitration agreements before the district court can rule on that issue." AB44; *see* AB4, 25, 36. But Defendants do not request that relief in this Court. Rather, they expressly sought a remand "with instructions for *the district court* to 'proceed summarily' to resolve Defendants' motion to compel on the existing record and without further delay, in accordance with the FAA's procedures." OB53 (emphasis added); *see* OB29. Nor, then, do Defendants seek "two bites at the appellate apple." AB4. Rather, it is Cirkunovs who would leave Defendants *no* bites at all by foreclosing appellate review of the district court's noncompliance with the FAA.

Cirkunovs' contention that exercising appellate jurisdiction here would open the floodgates to interlocutory appeals of discovery orders, AB43-44, is likewise overblown. As explained above, Section 16(a)(1)(A) authorizes appeals only when a court "order[s] proceedings to resolve *the substance* of a plaintiff's claims." *Coleman*, 117 F.4th at 101-03 & n.6 (emphasis added); *see supra* at 20. An ordinary discovery order that addresses matters "antecedent and collateral" to the merits does not refuse to stay the "trial of the action," and so does not trigger appellate jurisdiction. *Coleman*, 117 F.4th at 102. Appeal will thus only lie in the

extraordinary case where, as here, a district court sets a course to decide the merits as a threshold for determining arbitrability.[6]

* * *

"[B]y authorizing interlocutory appeals of district court orders that frustrate attempts to resolve disputes through arbitration," Section 16 "ensures that parties to enforceable arbitration agreements do not have to endure unnecessary federal court litigation before their rights under their agreements are vindicated." *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 44 (1st Cir. 2008). That guarantee would be an empty promise if a district court could, in every case, refuse to decide arbitrability until after a full trial on the merits of the potentially arbitrable claim. Yet that is the natural consequence of Cirkunovs' position. Such a rule gravely undercuts both Section 16 and the arbitration right itself. Once merits litigation proceeds, many of arbitration's benefits—"efficiency, less expense, less intrusive

[6] Cirkunovs' speculation that Defendants filed this appeal to avoid spoliation proceedings in the district court, AB44, is baseless. Defendants have continued to participate in those proceedings while this appeal is pending. Indeed, the district court's own Rule 706 expert was recently excused after he belatedly admitted to destroying all of the evidence on a key iPhone, prejudicing Defendants' ability to combat false accusations of misconduct. *See Johnson*, Dkt. 651 at 60-63; *Johnson*, Dkt. 652 at 5; *Johnson*, Dkt. 662. Cirkunovs' extended discussion of spoliation issues also fails to mention that the named plaintiffs in *Johnson* have significant spoliation exposure themselves. *See Johnson*, Dkt. 709. Regardless, these discovery issues are wholly irrelevant to the questions on appeal.

discovery, and the like"—are irretrievably lost. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023); *see BSI Grp.*, 2026 WL 2108675, at *2 (similar).

This Court recently reaffirmed that it remains "alert to new devices" that "interfere[]" with the FAA's statutory regime for enforcing arbitration agreements. *O'Dell v. Aya Healthcare Servs., Inc.*, 171 F.4th 1173, 1176 (9th Cir. 2026) (citations omitted). The order below is "just such a device." *Id.* (citation omitted). This Court's review is imperative.

## CONCLUSION

The order below should be vacated and the case remanded with instructions for the district court to proceed summarily to resolve Defendants' motion to compel on the existing record and without further delay, in accordance with the FAA's procedures.

Dated: August 24, 2026

Respectfully submitted,

*s/ Samir Deger-Sen*

Samir Deger-Sen*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-4619
samir.deger-sen@lw.com

* Pursuant to 9th Cir. R. 25-5(f), counsel attests that all other parties on whose behalf the filing is submitted concur in the filing's contents.

Christopher S. Yates
Aaron Tuen Fai Chiu
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Joseph D. Axelrad
LATHAM & WATKINS LLP
10250 Constellation Boulevard, Suite 1100
Los Angeles, CA 90067

William A. Isaacson
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW, Suite 800
Washington, DC 20004

Donald J. Campbell
Samuel R. Mirkovich
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, NV 89101

*Counsel for Appellants Zuffa, LLC and TKO Operating Company, LLC*

*s/ Maaren A. Shah*
Maaren A. Shah
Ellyde R. Thompson
Ellison Ward Merkel
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
maarenshah@quinnemanuel.com

Kristin N. Tahler
William R. Sears
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

*Counsel for Appellant*
*Endeavor Group Holdings, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 25-7906

I am an attorney for Appellants Zuffa, LLC, and TKO Operating Company, LLC.

This brief contains 6,973 words, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Samir Deger-Sen* **Date** August 24, 2026